Good morning. May it please the court, counsel for the government, my name is Matthew Green. I represent the petitioner in this case, Charles Bertrand, a citizen and national of Haiti, who is a detained immigrant in the Pinal County Adult Detention Center in Florence, Arizona. Your honors, before I begin, there is a quick procedural matter that I need to address to the court. I have recently filed several motions, including most recently an emergency motion to supplement the administrative record that I would respectfully ask to renew at this time and would ask to address the court on those issues. And if there's no objection, I will. Roberts, I think we can take your further motion under advisement, unless one of my colleagues wishes to comment any further. I think we'll just leave it at that. I think we've ruled two or three times on essentially the same motion. I don't think we really should have to rule a fourth time. Why don't you just get on with your argument. Thank you, and I would ask to reserve three minutes for rebuttal. Just watch the clock, counsel. Thank you, Judge. Your Honor, we're going to ask, I'm asking the court to find that the Board of Immigration Appeals erred in several respects, and for that reason it's appropriate for this court to remand the case to the Board of Immigration Appeals to begin with. Well, counsel, let's get to the first issue. What about the cannabis conviction as being a particularly serious crime? Can we decide that at the moment, or do we have to wait for Delgado? No, I think you can, and I agree with the government that this court can, and I would like to address that particular issue. Your Honor, I actually How do you see the potential impact of Delgado? Obviously, it hasn't been decided yet, but how do you see that picture? Well, Judge, I'm in complete agreement with the government that this court does have the authority and the discretion and the ability to review the particularly serious crime issues, so the potential impact is that I could be wrong and that there could be a firm mandate that this court doesn't, but at the moment, I think at best it's a gray area. So, Judge, what I'm going to simply state is that I think that this court, excuse me, that this court has always been under the same framework that was laid out in, excuse me for one moment. Not just matter of Frantescu, but also matter of Y.L., and matter of Y.L. has long set forth a variety of factors that are to be considered in whether or not a, well, an immigrant in removal proceedings has been able to show that his or her conviction for sale of a drug fits within a number of enumerated exceptions. Now, if we take a look, what we really have here are two BIA decisions. We have the BIA decision from 2006, we have the BIA decision from 2009. In my opinion, the problem with both of these decisions is that neither of them talks specifically about the facts of, the facts in the record of Mr. Bertrand's conviction. In my brief, I do explain that Mr. Bertrand, and that's at page 22, Mr. Bertrand explained in the record, and that's the record of appeal at basically between Bates 730 and 740, that he testified at the time he was at home fixing his bicycle so that he could go to work. There were American and Jamaican people in the apartment complex. He says he was not guilty of selling any marijuana. Now, of course, the conviction has been upheld. That's not what we're arguing. But his testimony in the record does go to the relevance and the sufficiency of the finding, whether it was a particular serious crime under the circumstances. There was a child, a young child who was a month old at the time, but he said that he sold this bag of marijuana for $5 on the outside or behind the house. There's nothing in the record to suggest that Mr. Bertrand was a violent or a dangerous man. The immigration judge put a lot of weight on the fact that he was on probation and that he reoffended, but under the enumerated factors, we would respectfully submit that the record does not show that this is a particularly serious crime and that Mr. Bertrand did come forward affirmatively with his own evidence. And has established that they're, you know, that none of these aggravating factors that we're familiar with actually were present. So for that reason, we would ask this Court to find that the immigration court, excuse me, that both immigration judges erred in not, well, excuse me, both immigration judges, but more importantly, the BIA in both decisions erred in not specifically referencing and taking into account the affirmative testimony of Mr. Bertrand as it applies to those relevant factors. Roberts. What about a BIA decision in 2007 called NAMI? Are you familiar with that case? Not specifically, Your Honor. So your argument here is that there is no precedential case by the BIA or that they are in conflict or what? I don't quite understand your argument. My argument is simply that under the enumerated factors, that the responsibility of a BIA case that you can point us to, to support your position. Well, Your Honor, just simply, excuse me, a matter of and I'm mixing up all of my numerals today, I apologize, but a matter of Y.L. Just matter of Y.L. and the factors enumerated there. And that case, I believe, was cited not only in my brief, but also in the government's. And most recently it was talked about in the Miguel-Miguel decision that is not cited, I don't think, in either. Well, what about Frentescu? Well, Frentescu is the beginning of all particularly serious crime analysis. But matter of Y.L. is very, very specific as to drug trafficking. So matter of Y.L., I think, is definitely the case to look at. And those particular factors, I'm going to ask to reserve the rest of my time. You may do so, counsel. We'll hear from the government. Good morning. May it please the Court, Jessica Sherman on behalf of the Respondent, Eric Holder. Counsel, before you go any further, I'm just kind of curious about some history here. My reading of the record indicates that the BIA detained Mr. Bertrand in 2005. Correct, Your Honor. And a PFR was filed in this Court in June 24, 2009. So we're two years after the PFR was filed. Is Mr. Bertrand still in custody? Yes, Your Honor, he is. He's been in custody for four years? Yes, Your Honor. What accounts for that? That's just bizarre. Because this case was remanded back in 2006, there were some delays, and the clock restarted as far as his post-order detention with the Board's most recent decision in 2009. In addition, we filed a motion to expedite to try to get proceedings moving quickly because of his detention status. The government did, and counsel didn't even do that? No, that was filed by the government. Really? And I gather your motion to expedite was not successful. No, it was. The Court granted it on, it was filed on February 9, 2009. But the only reason I'm taking up some of your time, counsel, is it is strange, at least from the experience of this individual judge, to see a person in custody for just now two full years before getting to oral argument. It's very, very strange. Again, part of the delay was due to the case being remanded back in the most recent year. But that was in 2006. Correct, Your Honor, but the clock was not. I'm talking about what's happened in the last 24 months when, presumably, if you file a petition for review, and it's given priority status, it ought to be heard within six months. Again, the government filed a motion to expedite, and so we've taken the steps that we can in order to move things along. Okay, go ahead with your argument. Mr. Bertrand was convicted of a particularly serious crime, the sale of marijuana, which is a drug trafficking offense. The government would argue that the court has jurisdiction to review this and reviews it for an abuse of discretion, as we set forth in our pleadings in Delgado. Here, the agency reasonably concluded that Mr. Bertrand was convicted of a particularly serious crime, because when he was convicted of the drug trafficking offense, he was also convicted of possession of marijuana. And he was on probation for aggravated battery. As the immigration judge emphasized, this shows that Mr. Bertrand has a tendency to re-offend and violate his probation. This court has held, and the board has held, that a drug trafficking offense is per se, or presumptively, a particularly serious crime. And so we would ask the court to defer to that and conclude here that because it was a drug trafficking offense, it is a particularly serious crime. What's the – what's your best BIA case on this? Matter of W.I.L., which Petitioner cited, held that drug trafficking offenses are per se, or presumptively particularly serious crimes, except for in very rare cases. And that was a decision by the Attorney General, and he set forth six factors that made caution against finding that a crime is a particularly serious crime if it's a drug trafficking offense. However, he made clear that all of the factors had to be present. And it was the Petitioner's burden to show that. He did not show that in this case. The factors were that it was a small quantity of a controlled substance, a very modest amount paid for the drugs, peripheral involvement, absence of violence, absence of organized crime, and absence of an adverse or harmful effect on juveniles. Again, it was Petitioner's burden to show that all 60 of these factors were present so that it would not be a presumptively particularly serious crime, and he did not meet that burden. In fact, he didn't even argue that before the agency, even though the Board relied on Matter of W.I.L. And it's the same. And where does NAMI fit in, and where does Frantescu fit in? Well, Matter of Frantescu was a 1982 decision that set forth the factors that should be considered in determining whether a crime is particularly serious. The Board in that case emphasized that the nature of the offense, the circumstances of the crime, and the type of sentence imposed are all relevant considerations, but it was not limited to those factors. And here, as the immigration judge found, the fact that he was on probation for another violent crime and that it was committed while he was also committing another crime, the possession of marijuana, it showed that his propensity to violate the law. And so it was, therefore, a particularly serious crime. In Matter of NAM, the Board held that it does not have to be an aggravated felony to constitute a particularly serious crime. Here we have an aggravated felony, so the issue, I mean, it doesn't really matter either way, because a drug trafficking offense is an aggravated felony under the INA. Are you arguing Chevron deference? To Matter of NAM, yes, Your Honor. However, it's, again, this case, unlike Matter of NAM, where there was not an aggravated felony conviction, here we have an aggravated felony conviction. And Petitioners never challenged that this is an aggravated felony. And what is your view of Delgado? We would argue that the Court does have jurisdiction to review the particularly serious crime determination. And that it's not limited to particularly serious crimes don't have to be aggravated felonies. They can be, but it's not required. And that under the abuse of discretion standard, this Court should find that Mr. Bertrand's conviction is for a particularly serious crime.  Under the Convention Against Torture, the theory of Mr. Bertrand's case is that he will be detained upon repatriation to Haiti. However, the 2007 State Department reports make clear that people in Mr. Bertrand's situation are not detained upon repatriation. In fact, the State Department reports show that only Haitian citizens who have criminal convictions in Haiti are detained, and they're detained for up to two weeks. There's no evidence in the record that Mr. Bertrand ever was convicted of any crimes in Haiti. And so there's no indication that he would be detained or tortured. As the Board made clear in matter of JFF, for a deferral of removal under the Convention Against Torture, you need to show that each element of your claim is more likely than not. So in order to succeed, Mr. Bertrand would have to show not only that it's more likely than not that he'd be tortured in Haiti, but also that it's more likely than not that he would be detained in Haiti. He has not shown that either of these events are likely to happen. Does the panel have any other questions? No questions. Mr. Green, you have some reserved time. Thank you, Your Honor. I was a little confused because you had mentioned the matter of NAMI, which I was not familiar with. I am familiar with matter of NAM. And I do agree, really, with the government's counsel as to what matter of NAM stands for. And really, matter of NAM is adopted almost entirely in ANIORTES, which I think is the most recent well-known particularly serious crime case in this circuit. And what's interesting about ANIORTES, really, and this circuit's treatment of particularly serious crime, is that it's incredibly broad as to the calculus, ultimately, that an immigration court or the BIA can make. But when considering the facts of a case and whether or not they constitute a particularly serious crime. Now, matter of YL, which both the government and myself are in agreement, this is the best case for considering whether — Well, you both agree that it's a relevant case, but you read it differently. Well, actually — well, we read the facts differently as they apply to the analysis set forth in YL, absolutely. But the analysis is simply there are six factors. And what the six factors say is that where an immigrant in detention or removal proceedings can show that there is a very small quantity of controlled substances, a very modest amount of money paid for the drugs in the offending transaction, merely peripheral involvement by the alien in the criminal activity, absence of any violence, the absence of any organized crime or terrorist organization involvement, and the absence of any adverse or harmful effect on the activity or transaction on juveniles, then the alien can show that there were extraordinary, extenuating, or compelling circumstances to rebut the presumption and show that he qualifies for withholding of removal. We respectfully submit that based on the record that has been made in this case at the two separate 2006-2009 individual hearings in this case, Mr. Bertrand has come forward, he has produced that evidence, and more importantly, the BIA in neither the 2006 nor the 2009 opinions specifically referenced it or took that into account. And for that reason, we would ask this Court to find that remand to the BIA for consideration of the facts on the record in the context of matter of Y.L. is appropriate. Thank you. Counsel, before you – your time has expired, but before you return to your place, I'm quite troubled by the record of detention in this case. Typically, we don't incarcerate aliens who are not serving prison sentences. This is a detention situation. Why didn't you do something to accelerate this process so that you're not waiting two full years from the date of PFR? I have had a habeas petition pending in the United States District Court for the District of Arizona since April of 2010. So April of 2010. It was refiled again in August of 2010. I could talk to you for a very long time, and I will actually want to make sure that – I mean, this Court said that he's been detained for four years. He's been detained for six years. 2005, June, is when he came back to the Miami airport. I have spent a lot of time with this man, and all I can say is that strategically – During the six years, was he serving a sentence for a conviction? Never. This is strictly DHS detention? Yes, it is. And we have brought it – Did you move to accelerate? You heard what the government said. Did you move to accelerate in our court? We have nothing to do with the District Court, obviously. I didn't move to accelerate in this court for a variety of reasons. And one of those reasons had to do with the fact that we had a habeas pending, and deports were suspended to Haiti for quite some time until late last year. There's an indication, and I believe in January. My purpose all along was to wait for the Department of State country conditions reports to come out in March, which were delayed. And, of course, there was that unfortunate earthquake as well. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Fernandez, Bybee